
George C. Paine, II
US Bankruptcy Judge
Dated: 08/27/09



# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE MIDDLE DISTRICT OF TENNESSEE

| | |
|---|---|
| ROWLAND WAYNE NOWLIN, Debtor | CASE NO. 04-08147 CHAPTER 13 Hon. MARIAN F. HARRISON |
| ROWLAND WAYNE NOWLIN Plaintiff | |
| v. | Adv. Proc. Number: 08-0459A |
| RNR, LLC Defendant | |

## MEMORANDUM

This matter is before the court on Rowland Wayne Nowlin's ("Nowlin" or "plaintiff") adversary proceeding against RNR, LLC ("defendant" or "RNR") seeking compensatory and punitive damages for RNR's alleged violation of this court's previous orders, including the discharge injunction. 11 U.S.C. §§ 1328 and 524. For the reasons cited herein, the court finds that RNR violated this court's orders repeatedly and therefore, orders RNR to repay all improperly withheld payments to the debtor within ten (10) days of entry of the accompanying Order; (2) orders RNR to pay compensatory damages to the debtor in the amount of $5,000; (3) orders RNR to pay the plaintiff's attorney fees in an amount to be determined by an affidavit filed within ten (10) days of entry of the accompanying Order; and (4)

orders RNR to pay punitive damages in the amount of $25,000.00 to the debtor.

The parties stipulated to the following:

1. This adversary proceeding relates to the bankruptcy case of the Debtor, Rowland Wayne Nowlin, who commenced this case by filing a Petition for relief under Chapter 13, Title 11 U.S.C. with the Clerk of this Court on July 6, 2004.

2. Defendant Rajesh Aggarwal dba Comfort Inn Downtown is a citizen of the State of Tennessee residing at 757 Armstrong Place in Brentwood, Tennessee 37027. [RNR, LLC substituted as defendant by agreement of the parties].

3. During the pendency of the bankruptcy case, the Debtor, through counsel, Edgar M. Rothschild, III, and pursuant to Local Rule 9075-1, moved the Court to issue an Order directing the Defendant Rajesh Aggarwal dba Comfort Inn Downtown, the Debtor's employer, to show cause why he should not be held in contempt of the Court's Orders to pay Trustee dated July 19, 2004, July 1, 2005, and August 11, 2006. Debtor's counsel took such action because, as a result of the Defendant's failure to remit funds to the Trustee at least monthly, the bankruptcy case had been dismissed three (3) separate times during the life of the case, by Orders of the Court entered March 15, 2005, July 10, 2006, and August 23, 2007.

4. Upon the second dismissal of the case, Debtor filed a show-cause motion against the Respondent, which was resolved by an Agreed Order entered September 26, 2006, that contained "drop dead" provisions requiring the employer to pay off the Debtor's case in the event of a future plan payment default by the employer.

5. Subsequent to the entry of the September 26, 200[7]8 Agreed Order, the case was dismissed a third time. Again the Court entered an Agreed Order setting aside the dismissal on October 11, 2007.

6. On October 16, 2007, this Court entered the order requiring the Defendant to pay off the Debtor's Chapter 13 Plan in the amount of $4,526.00.

7. On or about November 30, 2007, the Trustee received $4,526.00 on Defendant's behalf which payment did complete payments to the Trustee pursuant to the Order confirming the Debtor's Chapter 13 Plan.

8. On December 10, 2007, this Court entered an Order granting the Debtor a discharge pursuant to 11 U.S.C. § 1328 ("the Discharge Order").

9. Subsequent to the completion of this Chapter 13 bankruptcy case, the Plaintiff-Debtor continues to be employed by the Defendant.

AND

1. On September 26, 2006, an Agreed Order was entered in which the Defendant agreed to pay-off the debtor's Chapter 13 plan if it failed to make timely payments to the Trustee;

2. On October 16, 2007, a Notice of Default and Order of Judgment for Pay-Off Balance was entered with the Court;

3. On November 30, 2007, the Defendant voluntarily complied with the October 16, 2007 Order and tendered sufficient funds to pay-off the debtor's chapter 13 case to the Trustee;

4. The debtor received a discharge on December 10, 2007;

5. The initial Order Releasing Debtor/Employer From Order to Fund Plan was not sent to the correct address of the Defendant's Registered Agent;

6. The debtor's bankruptcy case was closed on February 28, 2008;

7. The Defendant continued to deduct "trustee bankruptcy payments" from the debtor after he received his discharge.

8. The Adversary Complaint was filed on December 12, 2008;

9. Attached to the Adversary Complaint were pay stubs from January 7, 2008 to September 19, 2008, indicating deductions of $85.00 per week totaling $1,615.00;

10. In late June/ early July 2009 Debtor's counsel provided additional pay stubs indicating the total withheld in 2008 was $1,955.00; and

11. In late June/ early July 2009 Debtor's counsel provided additional pay stubs indicating that the total withheld post-discharge was in (sic) 2007 was $85..

Stipulations Filed in Court, August 25, 2009.

From the Stipulations, it is uncontested that RNR continued, after the plan was paid off, to deduct $85 weekly payments from the debtor's paycheck that were not remitted to the Trustee. According to the defendant, the continued deduction was caused by a misunderstanding of the posture of the case or inadvertence. The debtor contends that the conduct was an attempt by his employer to recoup the payment RNR was forced to make to pay off his chapter 13 bankruptcy.

The debtor testified at trial about the withheld payments totaling $2,465.00. Mr. Nowlin who appears to be elderly and largely uneducated, earns approximately

$17,500.00 per year as a maintenance worker at the Downtown Comfort Inn.[1] During his testimony, he explained that although his plan was paid off, his employer continued to take money out of his paycheck. When his employer did not return the money to him, he initiated this adversary proceeding seeking to recover the payment withheld and damages for RNR's continued violation of this court's orders. Mr. Nowlin testified that his employer promised to give him his job back, pay back the withheld funds, and pay him additional monies if he would drop the lawsuit.

The defendants could provide no explanation for withholding funds from the debtor's paycheck that were not remitted to the Chapter 13 Trustee after RNR paid off the debtor's plan despite calling its bookkeeper, Manish (Max) Kharat and its president, Rajesh Aggarwal. Mr. Kharat testified that he was responsible for sending the information to "payroll" about the deduction, but that he had no knowledge of whether the deduction was actually remitted to the Chapter 13 Trustee.[2] Mr. Kharat explained that if he had known that the payments were still being deducted when the debt was paid, or that the payments were not being remitted to the Chapter 13 Trustee, that he would have taken care of the problem immediately. It was his testimony that he did not know of the existence of Mr. Nowlin's lawsuit over the improperly deducted funds until approximately two weeks prior to trial.

---

[1] The debtor's earnings are calculated based on the paystubs submitted as proof in this case. The paystubs do not indicate if the amount is the gross or net amount when showing year to date totals. The court was given no proof as to Mr. Nowlin's education and age, but made observations about him based on the court's role as trier of fact. **See generally, In re Barrett**, 487 F.3d 353 (6th Cir. 2007) (recognizing bankruptcy court's role as trier of fact with opportunity to view the witness and assess witness demeanor).

[2] Both Mr. Kharat and Mr. Aggarwal testified as if "payroll" were either a third-party servicer or a separate division, but neither explained who actually ran "payroll." The only proof about the organization of this business was that Mr. Aggarwal was a university professor and his wife an internist and they were the members of RNR, LLC.

4-U.S. Bankruptcy Court, M.D. Tenn.

Mr. Aggarwal, who is president of RNR, is a professor at Tennessee State University. He testified that due in part to his many work commitments, all the events in this case were caused by "lapses" on his part. He admittedly failed to communicate to "payroll" to stop the deduction after the plan was paid off. Mr. Aggarwal contends that had he received proper notice of the order stopping the payroll deduction and the debtor's discharge, he would have acted to correct the improperly deducted funds. He testified that he in no way was attempting to try to recoup his losses from having paid off the debtor's plan, but that the failure to stop the deduction was simply a "lapse."

The court did not find the testimony of Mr. Kharat and Mr. Aggarwal credible. By all appearances, RNR was trying to take advantage of an elderly maintenance worker by deducting money from his paycheck to have him pay back their court-ordered sanction. Neither Mr. Aggarwal nor Mr. Kharat could provide a straight-forward answer to why the money taken from the debtor's paycheck was not paid back to the debtor or remitted to the Chapter 13 Trustee.

RNR's "lapses" in this case show a total disrespect for this court's orders. The litany of events is staggering:

1. <u>June 2005</u>: Debtor's case dismissed because RNR failed to remit payments to the Chapter 13 Trustee that it deducted from the debtor's paycheck. RNR order to "pay damages and reasonable attorney's fees because of its consistent failure to remit payments."

2. <u>July 2006</u>: Debtor's case is again dismissed for because RNR failed to remit payments to the Chapter 13 Trustee that it deducted from the debtor's paycheck. Case reinstated after expedited hearing to set aside dismissal.

3. <u>September 2007</u>: After the debtor's case is dismissed for a third time because RNR failed to remit payments to the Chapter 13 Trustee that were deducted from debtor's paycheck, the parties enter into an Agreed Order resolving a motion for additional damages that provides:

5-U.S. Bankruptcy Court, M.D. Tenn.

> The parties agree that should Respondents fail to pay the Trustee funds withheld from the Debtor's paycheck on a monthly basis from now until the end of the case, Respondents at that time shall be liable for the entire plan pay-off balance of the Debtor, and the Debtor may be awarded a judgment for the pay-off balance at that time by the filing of a single document styled "Notice of Default Constituting Order of Judgment for Pay-Off Balance," for which execution may apply if necessary.

    RNR was also required to pay debtor's attorney fees for the second dismissal of the case.

4. <u>October 2007</u>: RNR again fails to properly fund the plan even though deductions from the debtor's paycheck were made. The chapter 13 Trustee and debtor's counsel submit a judgment requiring RNR to pay off the debtor's chapter 13 plan in the amount of $4,526.00.[3]

5. <u>2007-2008</u>: Despite being ordered to pay off the balance of the debtor's plan, RNR continues to deduct $85 weekly from the debtor's paycheck that is not remitted to the Chapter 13 Trustee.

RNR claims it did not get notice of the order stopping the payroll deduction (12/07/07) or the discharge order (12/10/07), and therefore was not in contempt of this court's orders that it had no knowledge of. If RNR did in fact have notice of those orders, it is undoubtedly in contempt of those orders by continuing to deduct amounts from the debtor's paycheck to recoup its losses for paying off Mr. Nowlin's plan. If RNR did not have notice, as it claims, it was nonetheless in contempt of this court's July 1, 2005 "Order to Pay Trustee" that requires RNR to

---

[3] Mr. Aggarwal submitted an affidavit in a proceeding regarding his former lawyer that details his arrogance and disrespect for this court's orders:

    3. Mr. Nobles told me of the Nowlin Bankruptcy payoff and that if the payoff was not made quickly that the amount would increase.

    4. I told Mr. Nobles to pay it off and I would bring him the money.

    5. After telling Mr. Nobles to payoff the bankruptcy, <u>I forgot to deliver him the money</u>.

    6. <u>Mr. Nobles notified me numerous times to deliver the payoff money</u>.

(Emphasis Added). Apparently, a sanction of $4,526.00 was not enough to get the attention of RNR to take the court's orders seriously.

remit payments to the trustee unless ordered otherwise, and:

> [f]ailure to comply with the provisions of this order may result in a motion to show cause why said entity should not be found in contempt.

RNR's circular attempts to explain the "lapses" lands RNR right back where it started from, in contempt of this court's orders and the discharge injunction. RNR violated the court's orders and the discharge injunction by seeking to recover payments from the debtor that RNR was ordered to make.

To get his money back, the debtor's filed this adversary proceeding. Judge Stair, in his opinion, **In re French**, 401 B.R. 295 (Bankr. E.D. Tenn. 2009) recently discussed a bankruptcy court's authority to enforce its own orders in the context of a contempt motion brought when a creditor filed a proof of claim that improperly revealed debtor's social security number. Judge Stair explained:

> Section 105 outlines certain powers of the court and imposes upon the court a duty to uphold the provisions of the Bankruptcy Code in subsection (a) by authorizing the following:
>
> > The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title. No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, sua sponte, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process.
>
> 11 U.S.C. § 105(a) (2005). The court's authority under § 105(a) is broad but " § 105(a) is not without limits, may not be used to circumvent the Bankruptcy Code, and does not create a private cause of action unless it is invoked in connection with another section of the Bankruptcy Code." **In re Rose**, 314 B.R. 663, 681 n. 11 (Bankr.E.D.Tenn.2004) (citations omitted). The Sixth Circuit has held that "[w]e do not read § 105 as conferring on courts such broad remedial powers. The 'provisions of this title' simply denote a set of remedies fixed by Congress. A court cannot legislate to add to them." **Pertuso**, 233 F.3d at 423 (citation omitted). Instead, the court may only use its § 105(a)'s equitable powers "in furtherance of the goals of

> the [Bankruptcy] Code." **Childress v. Middleton Arms, L.P. (In re Middleton Arms, L.P.)**, 934 F.2d 723, 725 (6th Cir.1991).
>
> Undoubtedly included within the court's § 105(a) powers is the authority to find a party in civil contempt for noncompliance with orders or violations of the Bankruptcy Code and/or Rules; however, it "does not authorize the bankruptcy courts to create substantive rights that are otherwise unavailable under applicable law[.]" **Pertuso**, 233 F.3d at 423 n. 1 (**quoting United States v. Sutton**, 786 F.2d 1305, 1308 (5th Cir.1986)). Civil contempt is generally used by courts to coerce an individual into performing or obeying an order of the court and to compensate the party injured by the contemptuous actions. **United States v. Bayshore Assocs., Inc.**, 934 F.2d 1391, 1400 (6th Cir.1991); In re Walker, 257 B.R. 493, 497 (Bankr. N.D. Ohio 2001) ("Compensatory contempt orders compensate the party harmed by the other party's contemptuous actions; coercive orders seek to cajole the party in contempt to act in the manner desired by the court.") **(quoting Consol. Rail Corp. v. Yashinsky**, 170 F.3d 591, 595 (6th Cir.1999)). A party seeking civil contempt must establish, by clear and convincing evidence, that the offending party "violated a definite and specific order of the court requiring [them] to perform or refrain from performing a particular act or acts with knowledge of the court's order[,]" after which the burden shifts to the offending party to produce evidence of "a present inability to comply" without regard to intent, as "[w]illfulness is not an element of civil contempt[.]" **RoleKharatWatch U.S.A. v. Crowley**, 74 F.3d 716, 720 (6th Cir.1996) (citations omitted); **see also In re Crabtree**, 39 B.R. 702, 710 (Bankr .E.D. Tenn.1984).
>
> Appropriate fines for civil contempt generally include the parties' actual damages incurred and reasonable attorney's fees. **Braun v. Champion Credit Union (In re Braun)**, 152 B.R. 466, 474 (N.D. Ohio 1993).

**French,** 401 B.R. at 313-14. The Sixth Circuit Court of Appeals has similarly stated that "[b]ankruptcy courts, like Article III courts, enjoy inherent power to sanction parties for improper conduct." **Mapother & Mapother, P.S.C. v. Cooper (In re Downs)**, 103 F.3d 472, 477 (6th Cir.1996). "The federal courts' inherent power to protect the orderly administration of justice and to maintain the authority and dignity of the court extends to a full range of litigation abuses." **Mitan v. Int'l Fid. Ins. Co.**, 23 Fed.Appx. 292, 298 (6th Cir.2001) (ruling that a court can award sanctions "when bad faith occurs"). In this case, the defendant has violated court orders, has exhibited bad faith, and has essentially ignored the rules and rulings of this court

that it found inconvenient.

"The clear language of 11 U.S.C. § 105(a) grants this Court significant equitable powers as well as latitude in framing the relief necessary to carry out both the specific provisions of the statute as well as its philosophical underpinnings." **In re John Richards Homes Bldg. Co., L.L.C.**, 404 B.R. 220, 227 (E.D. Mich., 2009) (quoting **In re Ludwick**, 185 B.R. 238, 245 (Bankr.W.D.Mich.1995)).

The court finds that, as a sanction for RNR's conduct, the debtor has shown, by clear and convincing evidence, that he is entitled to compensatory damages in the full amount of the withheld funds, and also all reasonable attorney fees as a result of having to pursue RNR's repayment.[4] In addition to the repaid funds, the court finds that the debtor is entitled to $5,000.00 for the inconvenience of having to deal with the bringing of a lawsuit, potential loss of his job, lost wages, and other incidentals.

The debtor also sought punitive damages. This court agrees with the reasoning of **In re Perviz**, 302 B.R. 357 (Bankr. N.D. Ohio 2003):

> Unlike compensatory damages, punitive damages serve the same purpose as criminal penalties: to punish a party for their wrongful conduct and to deter further conduct of that same nature. **Memphis Community Sch. Dist. v. Stachura**, 477 U.S. 299, 307 fn. 9, 106 S.Ct. 2537, 2543, 91 L.Ed.2d 249. In situations where this policy function would be furthered, most court decisions have held, and this Court subscribes to the legal tenet that bankruptcy courts have the inherent power to punish parties for their contemptuous violation of the discharge injunction through the imposition of punitive damages. **In re Latanowich**, 207 B.R. 326 (Bankr.D.Mass.1997); **Walker v. M & M Dodge, Inc. (In re Walker)**, 180 B.R. 834 (Bankr. W.D.La. 1995).

---

[4] The parties agreed that the amount of money improperly deducted from the debtor's check totaled $2,465.00.

> The reasoning behind this was well explained in **In re Walker**: "this Court does not believe that Congress would enact § 524 and not empower bankruptcy courts to dissuade invidious creditors from conduct violative of a clear congressional prohibition. To do so would be nothing more than an exercise in legislative futility." **Id.** at 849.
>
> However, as in any case, punitive damages are only appropriate where there is some sort of nefarious or otherwise malevolent conduct. **Stachura**, 477 U.S. at 307 fn. 9, 106 S.Ct. 2537. Thus, in situations involving a violation of the discharge injunction, punitive damages have been properly limited to circumstances where there exists a complete and utter disrespect for the bankruptcy laws. **In re Arnold**, 206 B.R. 560, 568 (Bankr. N.D.Ala. 1997) (punitive damages warranted where creditor acted willfully and maliciously in clear disregard and disrespect of the bankruptcy laws); **cf In re Borowski**, 216 B.R. 922, 925 (Bankr. E.D.Mich. 1998) (where parties appeared to have been acting more out of ignorance than clear disregard and disrespect of bankruptcy laws, requisite malevolent intent to award punitive damages was lacking.) In line therewith, this Court has always exercised great restraint in awarding punitive damages. Even so, if ever there was a case calling for the imposition of punitive damages, this is it.

**Perviz**, 302 B.R. at 372-73.

In this case, paying off of the debtor's plan in the amount of $4,526.00 had absolutely no deterrent effect on RNR. The debtor had to constantly monitor RNR's conduct which caused three prior dismissals of his case, and allowed RNR the use of this honest but unfortunate debtor's money while he struggled financially. This is the fourth time the court has had ensure RNR's compliance with the bankruptcy rules, code and this court's order. RNR's recidivism is unacceptable.

Therefore, this court finds that, based on the lack of credibility of RNR's witnesses, the extensive history of disrespect, and history of noncompliance, punitive damages in the amount of $25,000.00 are warranted. RNR not only ignored court rulings, but also took demonstrative action to thwart the fresh start bankruptcy law promises to a chapter 13 debtor. Absent this court's order, RNR's willful act of secretly trying to collect from an honest debtor the repayment of the

10-U.S. Bankruptcy Court, M.D. Tenn.

Case 3:08-ap-00459    Doc 35    Filed 08/27/09    Entered 08/27/09 15:12:48    Desc Main
Document      Page 10 of 11

$4,526.00 sanctions would be at best ignored and at worst rewarded. As noted in **Perviz**,

> consequential damages do little more than dispossess the contemnor of its ill-gotten gains, which leaves it in no worse a position than if it had not violated the law at all. This gives [the creditor] no incentive to discontinue its unlawful practice. In the form of punitive damages, the Court will supply this incentive by making it significantly more costly for [the creditor] to do business by illegal methods than by legal ones.

**Perviz (quoting In re Latanowich,** 207 B.R. 326, 338 (Bankr.D.Mass.1997)).

It is therefore ORDERED that RNR, LLC is in contempt of this court for violation of it July 1, 2005 Order, September 26, 2007 Order, October 17, 2007 Order, and the discharge order (11 U.S.C. § 1328 and § 524). As sanction for RNR's contemptuous conduct, the court ORDERS sanctions in the following amounts be paid within ten (10) days of the Order to effectuate this Memorandum Opinion:

1. Return of All Improperly Withheld Wages in the amount of $2,465.00;
2. Attorney Fees of the debtor associated with pursuing this adversary proceeding;[5]
3. Compensatory Damages in the amount of $5,000.00; and
4. Punitive Damages in the amount of $25,000.00.

Counsel for the debtor shall prepare an Order not inconsistent with this Memorandum within ten (10) days of entry of the Memorandum.

**THIS MEMORANDUM WAS SIGNED AND ENTERED ELECTRONICALLY AS INDICATED AT THE TOP OF THE FIRST PAGE.**

---

[5] The amount of attorney fees shall be submitted to the court in the form of an affidavit accompanying the Order to be submitted by debtor's counsel.

11-U.S. Bankruptcy Court, M.D. Tenn.

This Order has Been electronically signed. The Judge's signature and Court's seal appear at the top of the first page.
United States Bankruptcy Court.

Case 3:08-ap-00459  Doc 35  Filed 08/27/09  Entered 08/27/09 15:12:48  Desc Main Document  Page 11 of 11